

FILED
CLERK, U.S. DISTRICT COURT

JUN 13 2008

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALFRED CABALLERO, | )  NO. CV 07-6453-JFW(E) |
| Petitioner, | ) |
| | ) |
| v. | )  ORDER ADOPTING FINDINGS, |
| | ) |
| J.T. HARTLEY, Warden, | )  CONCLUSIONS AND RECOMMENDATIONS OF |
| | ) |
| Respondent. | )  UNITED STATES MAGISTRATE JUDGE |
| | ) |

Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein, the attached Report and Recommendation of United States Magistrate Judge, the Objections to the Report and Recommendation filed by Respondent on June 6, 2008, and Petitioner's June 5, 2008 filing indicating that Petitioner now has filed a California Supreme Court petition containing four claims.

In the Objections, Respondent contends that the Magistrate Judge erred by relying on Petitioner's pro se submissions to the California Supreme Court to determine whether Petitioner had fairly presented to that Court certain claims alleged in the present Petition. In

California, "[t]he general rule that a defendant who is represented by an attorney of record will not be personally recognized by the court in the conduct of his case applies to the filing of pro se documents on appeal." People v. Clark, 3 Cal. 4th 41, 173, 10 Cal. Rptr. 2d 554, 833 P.2d 561 (1992), cert. denied, 507 U.S. 993 (1993) (internal quotations omitted; quoting People v. Mattson, 51 Cal. 2d 777, 798, 336 P.2d 937 (1959)).   The California Supreme Court has declared that, although it will accept and consider pro se motions regarding representation, "[a]ny other pro se documents offered in an appeal will be returned unfiled [citation], or, if mistakenly filed, will be stricken from the docket [citation]." People v. Barnett, 31 Cal. 4th 466, 3 Cal. Rptr. 3d 108, 73 P.3d 1106 (2003) (internal quotations and footnotes omitted).

Despite this "general rule," however, California courts sometimes do consider represented defendants' pro se briefs containing arguments other than arguments related to representation.  See, e.g., People v. Clark, 3 Cal. 4th at 173 (the court read and considered the issues and arguments raised in the defendant's pro se briefs, finding therein no basis to reverse the verdicts or sentence); People v. Mickey, 54 Cal. 3d 612, 641, 286 Cal. Rptr. 801, 818 P.2d 84 (1991), cert. denied, 506 U.S. 819 (1992); People v. Nwafor, 46 Cal. App. 4th 39, 46 & n.3, 53 Cal. Rptr. 2d 564 (1996); People v. Nichols, 29 Cal. App. 4th 1651, 1659 n.3, 35 Cal. Rptr. 2d 478 (1994); People v. Boulware, 20 Cal. App. 4th 1753, 1757 n.2, 25 Cal. Rptr. 2d 381 (1993).  Moreover, the California Supreme Court's docket in Petitioner's case indicates that the Court accepted Petitioner's pro se submissions as "received" (see docket in People v. Caballero, California Supreme Court case number

S152200).  The docket does not indicate that the Court ever returned the documents to Petitioner or ever struck the documents from the docket.  In these circumstances, the arguments contained in Petitioner's <u>pro se</u> submissions to the California Supreme Court should be deemed "fairly presented" to that Court for purposes of the exhaustion analysis.

Therefore, the Court approves and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that: (1) the claims identified in the Report and Recommendation as exhausted are deemed to be exhausted; (2) the claims identified in the Report and Recommendation as unexhausted are deemed to be unexhausted (3) Petitioner's Motion for a Stay is denied; and (4) within thirty (30) days of the date of the Order, Petitioner shall file either: (a) a request to amend the Petition to delete and abandon Petitioner's unexhausted claims; or (b) a request for dismissal of the entire Petition without prejudice.[1]

///
///
///
///
///
///

---

[1]    The fact that Petitioner now may have a habeas petition pending in the California Supreme Court containing some or all of Petitioner's unexhausted claims does not alter this Court's conclusion that Petitioner has failed to show good cause for a stay under <u>Rhines v. Weber</u>, 544 U.S. 269 (2005).

1      IT IS FURTHER ORDERED that the Clerk serve copies of this Order

2   and the Magistrate Judge's Report and Recommendation herein by United

3   States mail on Petitioner and counsel for Respondent.

4

5      DATED: _____6|11_____, 2008.

6

7

8

9                                 JOHN F. WALTER
                               UNITED STATES DISTRICT JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED CABALLERO,<br><br>           Petitioner,<br><br>   v.<br><br>J.T. HARTLEY, Warden,<br><br>           Respondent. | ) NO. CV 07-6453-JFW (E)<br>)<br>)<br>)<br>) REPORT AND RECOMMENDATION OF<br>)<br>) UNITED STATES MAGISTRATE JUDGE<br>)<br>) |

This Report and Recommendation is submitted to the Honorable John F. Walter, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

PROCEEDINGS

Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on October 4, 2007. On October 18, 2007, the Court dismissed the Petition with leave to amend. On January 22, 2008, Petitioner filed a First Amended Petition ("Petition") asserting six grounds for relief, accompanied by a supporting memorandum ("Pet.

1  Mem.") and exhibits.  On April 1, 2008, Respondent filed an Answer

2  alleging that all of Petitioner's claims are unexhausted.

3

4       It appeared to the Magistrate Judge that Respondent had not

5  lodged with the Court all of the documents that Petitioner or his

6  counsel had submitted to the California Supreme Court in support of

7  Petitioner's petition for review filed in that court.  Therefore, on

8  April 11, 2008, the Court ordered Respondent to lodge all documents

9  submitted to the California Supreme Court by Petitioner or

10  Petitioner's counsel in <u>People v. Caballero</u>, California Supreme Court

11  case number S152200, as reflected on the docket of that action.

12

13       On April 18, 2008, Petitioner filed a "Motion to Stay Claims 1

14  thru 5, etc." ("Motion for a Stay").  In the Motion for a Stay,

15  Petitioner indicates an intent to abandon Ground Six of the Petition,

16  and seeks a stay of the present Petition with respect to Grounds One

17  through Five.  On April 24, 2008, Petitioner filed a Reply, alleging,

18  <u>inter alia</u>, that Claims One through Six are exhausted.[1]

19

20                              **BACKGROUND**

21

22       A jury found Petitioner guilty of elder abuse in violation of

23  California Penal Code section 368(b)(1), assault with a firearm in

24  violation of California Penal Code section 245(a)(2), and possession

25

26  _____

27       [1]    Thus, the Reply makes it unclear whether Petitioner
   intends to abandon Ground Six.  For purposes of this recommended
28  disposition, the Court assumes, <u>arguendo</u>, that Petitioner does
   not intend to abandon Ground Six.

                                  2

1  of a firearm by an ex-felon in violation of California Penal Code

2  section 12021(a)(1) (Petition, p. 2; Respondent's Lodgment 1).[2]  The

3  jury found true the allegation that Petitioner personally used a

4  firearm in the commission of the offense within the meaning of

5  California Penal Code section 12022.5(a) (Petition, p. 2; Respondent's

6  Lodgment 1).  Petitioner received a prison sentence of seven years and

7  eight months (Petition, p. 2; Respondent's Lodgment 1).

8

9       On March 27, 2007, the Court of Appeal affirmed the judgment

10  (Respondent's Lodgment 5).  Also on March 27, 2007, the Court of

11  Appeal denied Petitioner's companion habeas corpus petition without

12  opinion (Respondent's Lodgments 6, 7).  Petitioner filed another

13  habeas corpus petition in the Court of Appeal on April 16, 2007, which

14  that court denied without opinion on April 24, 2007 (Respondent's

15  Lodgments 8, 9).  Petitioner filed a document in the Court of Appeal

16  on April 20, 2007, which that court construed to be a habeas corpus

17  petition and denied on May 1, 2007 (Respondent's Lodgments 10, 11).

18

19       In the meantime, Petitioner's counsel filed a petition for review

20  in the California Supreme Court on April 4, 2007 (Respondent's

21  Lodgment 12).  In that proceeding, Petitioner submitted to the

22  California Supreme Court the following pro se documents: (1) a

23  "Request for Judicial Notice," received by the court on May 7, 2007;

24  (2) an "Augment" habeas corpus petition, received by the court on

25

26  _____

27       [2]    Respondent's lodgments are not identified by lodgment
   number.  The Court has supplied lodgment numbers reflecting the
28  order in which the lodgments are listed on the Notice of Lodging
   and Supplemental Notice of Lodging.

1   May 21, 2007; (3) two documents entitled "Police Watch Pitchess Motion

2   Investigation, etc.," received by the court on May 24, 2007; and (4) a

3   supplemental exhibit and cover letter, received by the court on

4   June 5, 2007 (Respondent's Supplemental Lodgments 4, 5, 6, 7, 8).  The

5   California Supreme Court's docket indicates that, on June 8, 2007,

6   that court received from Petitioner a "4 page brief," which is not a

7   part of the present record.[3]  The California Supreme Court denied

8   Petitioner's petition for review without opinion on June 13, 2007

9   (Respondent's Lodgments 12, 13; Respondent's Supplemental Lodgment 1).

10  The United States Supreme Court denied Petitioner's petition for writ

11  of certiorari on November 26, 2007.  See Caballero v. California, 128

12  S. Ct. 663 (2007).

13

14                           FACTUAL SUMMARY

15

16      The following factual summary is taken from the opinion of the

17  California Court of Appeal in People v. Caballero, 2007 WL 902254, at

18  **1-4 (Cal. Ct. App. 2d Dist. March 27, 2007), cert. denied, 128 S.

19  Ct. 663 (2007).  See Galvan v. Alaska Dep't of Corrections, 397 F.3d

20  1198, 1199 & n.1 (9th Cir. 2005) (taking factual summary from state

21

22  _____

23          [3]    The Court takes judicial notice of the California
    Supreme Court's docket in People v. Caballero, case number

24  S152200, available on the PACER database at
    http://pacer.uspci.uscourts.gov.  See Mir v. Little Company of

25  Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988) (court may take
    judicial notice of court records).  On May 16, 2008, Respondent's

26  counsel filed a Declaration indicating that the "4 page brief"
    was not found in the files of the California Court of Appeal or

27  the California Supreme Court, and that Petitioner had never
    served the "4 page brief" on Respondent (see Declaration of Shawn

28  McGahey Webb, etc.," filed on May 16, 2008).

                                   4

1   appellate decision).

2

3       On August 19, 2005, Esperanza Villanueva called 911 and

4   reported that appellant was shooting at her with a rifle.[4]

5   Villanueva told the operator that she was eighty-seven years

6   old, was alone, and the shooter had scared her and that at

7   that moment "he's shooting with a rifle out there."

8   Villanueva gave her street address on Hellman Avenue and

9   midway through her sentence, paused and said: "[O]h, I am so

10   nervous, I am shaking, I am so afraid."  The operator

11   directed her to calm down and asked for her name.  After

12   stating her name, Villanueva added, "His name is Alfredo

13   Caballero.  He plays.... We are trying to kick him out of

14   the house but he doesn't want to leave with his woman.  Oh,

15   she also insults me."

16

17       When asked for appellant's age, Villanueva replied:

18   "Ma, Ma, Ma, March ... thirteen, eleven.... More or less,

19   over forty-seven.  I don't remember because there are things

20   that ... oh, I am scared.  Around forty something."  The

21   operator asked for his name.  Villanueva responded that it

22   was her son.

23

24       The operator again told Villanueva to calm down and

25   asked if the shooter was outside.  Villanueva said that he

26   was.  She said that appellant had a rifle and though she did

27   _____

28       [4]   A Spanish to English transcription of the recorded 911
call was received in evidence.

5

1 not know what kind it was, it was big.  When asked if it

2 were a toy, Villanueva replied:  "No, no, no, no, it's a

3 real one."  When asked by the operator what appellant was

4 doing with the rifle Villanueva responded: "Well he shot a

5 ... he shot it when he arrived.  He came singing with the

6 woman and I was bringing my laundry inside.  And uh ... he

7 scared me when he shot it."  When asked if he shot at her,

8 Villanueva stated: "Well he, he, shot at me when I was going

9 outside.  I was on my way out when he shot the rifle.  He

10 shot it."  When asked whether he was drunk Villanueva

11 replied that he was not.

12

13   In response to the operator's inquiries, Villanueva

14 stated the shooter lived at the same address but in a room

15 in the back.  When queried about his attire, Villanueva

16 responded: "Oh, what is he wearing right now?  I didn't see

17 him coming in, coming in, going in to the right is the room

18 where he lives.  I look out the front window.  I can't go

19 out at all....  Oh, my God in heaven.  Oh, God in heaven."

20

21   At trial, Villanueva identified appellant as her son.

22 She testified that he and her other son, Angel Caballero,

23 took care of her and the three of them resided at the

24 Hellman Avenue residence.  Angel lived in the main house

25 with her, and appellant lived in a converted garage.

26 Villanueva told appellant that he should look for another

27 place to live, because she did not like his girlfriend,

28 Susanne Castle, living there with him.

1    Villanueva did not remember telling an officer that

2    after she made these comments to appellant about Castle,

3    appellant became enraged, ran into the garage, and retrieved

4    a rifle.  She testified: "I hadn't even seen any rifle in

5    that house for my life."  She also denied that appellant

6    fired a shot at her as she tried to return to the house.

7    She denied telling the police anything like that, because

8    she "hadn't even seen any rifle."

9

10   Villanueva testified that she called the police because

11   she heard a shot in the back of the house.  But she did not

12   remember the date of the call or what she had said.

13

14   She remembered that two officers arrived at the house a

15   few days after the 911 call.  When asked if she showed them

16   the hole where a bullet had gone through, Villanueva

17   replied, "There was never a bullet there, never."  She

18   denied demonstrating how appellant held a rifle, and denied

19   that she had ever seen him with a rifle.  She said she would

20   never have told an officer that she saw appellant with a

21   rifle, because "[t]hat never happened."  Villanueva also

22   denied telling an officer that appellant telephoned her

23   after the shooting incident and told her it was all her

24   fault that he might be in trouble.

25

26   When asked if appellant shot in her direction with a

27   rifle on August 19, Villanueva responded, "No.  Well, when

28   is he going to shoot at me?  Never."  When asked if she told

7

anyone that appellant shot at her with a rifle, she replied, "Who could I have told that?" She volunteered that she took "medication, because I lose my mind on and off. You can talk to the doctor."

Villanueva explained when she said "losing her mind" she meant that she forgot things. She said that Dr. Lew was treating her for dementia, loss of memory, anxiety, and hallucinations, but she did not remember how many medications she was taking at the time of the shooting. She did recall that she had medication for anxiety and forgetfulness and to help her to sleep and for her heart.

Defense counsel asked if she was hallucinating about seeing the rifle when she called 911. Villanueva agreed and denied seeing appellant when she heard the shot. Villanueva admitted she loved her son and that she did not want anything bad to happen to him, because he was her son.

Detective Jose Zarate, of the Los Angeles County Sheriff's Department, testified that he responded about three to five minutes after the 911 call. As Villanueva came out of her house, she was crying, "obviously rattled" and "shaking a lot." She appeared afraid and continued to cry and be upset while relating what happened. But she appeared to understand what Zarate said and what was going on around her. She made no references to hallucinating and did not mention any problems about her memory. Rather, she

8

1  appeared lucid, very coherent and was adamant about what had

2  transpired.

3

4      Villanueva told Zarate that she was standing in the

5  door jamb of her front door about to go out when appellant

6  approached with his girlfriend.  Villanueva said something

7  like "here you are again with that woman."  Appellant became

8  enraged and went to the converted garage.  Villanueva

9  demonstrated how appellant reached inside, grabbed the

10  rifle, and held it with both hands.  As he ran towards her,

11  Villanueva became scared and locked the security screen

12  door.  She demonstrated how appellant then reached with his

13  left hand to grab the door handle and shot with his right.

14  Once inside, she called 911.

15

16      When Zarate pointed out "a piercing hole" at an upward

17  angle in the wall just left of the door, Villanueva was

18  "visibly upset."  Covering her mouth, she said that the hole

19  had not been there before.  She never mentioned that a cable

20  man had made the hole while installing a cable.

21

22      Villanueva stated that on the day of the incident

23  appellant pointed and fired a gun at her.  Another deputy

24  showed her the rifle recovered from the storage shed.  When

25  asked if it were the one she saw, she appeared disturbed,

26  cried, and replied, "'Yeah, that's it ... that's the one.

27  That's the one.'"

28  ///

9

1    Villanueva told Zarate that appellant had fired the

2    rifle about five times before to scare her.  When asked why

3    the police were not called about the prior shootings,

4    Villanueva explained she did not "want to be a bad mother"

5    and she did not want to get her son into trouble.  She

6    called the day of this incident, because she was scared and

7    because appellant had fired at her.

8

9    Sergeant Diana Gealta testified that at a subsequent

10   interview, Villanueva denied making a prior statement about

11   appellant firing a rifle at her and said the statement was

12   not true.  She appeared to be ready to cry as she added that

13   the deputies must have misunderstood her.

14

15   During this interview, Villanueva stated that she

16   called 911 when she heard a gunshot, but she was inside and

17   did not see who fired the shot or where it came from.  She

18   said that she had never seen a gun until the day of the

19   incident when the deputies confiscated the gun, and they

20   were walking towards their vehicle.  The wall hole "was

21   created ... by the cable company to put [the] cable

22   through."  She denied appellant shot at her.

23

24   Villanueva, who was coherent and lucid, also told

25   Gealta that appellant had called her from jail and told her

26   he was sleeping on the floor and that he had been beaten up.

27   He said that it was her fault because she had called the

28   police.  Sergeant Gealta believed that Villanueva was

1    concerned for her son's well-being because she kept saying

2    "he needs help" and "he shouldn't be in jail."

3

4        Deputy Andrew Leos testified that at the scene,

5    appellant spontaneously said that he was trying to clean the

6    gun and that it accidentally went off.  He then stated that

7    the gun discharged as he was checking to see if it was

8    loaded.  His third story was that the rifle fell out of his

9    arms and discharged upon hitting the ground as he was

10   removing it from his room at the request of his girlfriend

11   who was staying with him.  He also stated the gun was in the

12   shed.  Prior to these statements, the deputies had not asked

13   him any questions.

14

15       The deputies found a rifle in the back of the shed.

16   Three bullets were in the magazine, and a fired bullet in

17   the chamber.  Leos described the size of the hole in the

18   wall as consistent with a bullet hole.

19

20       Detective David Butler testified that during a jail

21   interview, appellant stated his girlfriend Castle was afraid

22   of the rifle and while taking it to the shed, he dropped it,

23   and as the butt hit the ground, it went off and the bullet

24   went in the air.  He denied shooting at Villanueva.

25

26       Manuel Munoz, a firearms expert, testified that in

27   order to fire the recovered rifle, the trigger had to be

28   pulled, which required pressure exerted similar to that in

11

picking up a two and a half pound bag of rice with a finger.
He opined the rifle was "in good working order" and if
dropped with a bullet in the chamber, it would not fire.
Munoz also testified that the rifle could not be cleaned
with ammunition in it.

Appellant did not testify.  Angel Caballero testified
that since the age of 80, his mother forgot things and
hallucinated.  He related that she would turn on the
bathroom light, forget to turn it off, and in the morning,
deny leaving the light on.  When asked about hallucinations,
Caballero gave the following as an example: if he were at
home nailing something, Villanueva would tell him "it's not
done properly" and then say something like she knew how and
would show him.  Villanueva took pills for forgetfulness and
anxiety, calcium, and medication for insomnia and for her
heart.

Angel Caballero did not know whether Villanueva ever
hallucinated about appellant shooting a rifle at her.  He
saw a rifle in the storage shed within the past year and
asked appellant to remove it from the shed because he
thought it was dangerous to have weapons around the house.

(Respondent's Lodgment 5; People v. Caballero, 2007 WL 902254, at
**1-4 (Cal. Ct. App. 2d Dist. March 27, 2007) (footnotes in original
renumbered).

///

12

**PETITIONER'S CONTENTIONS**

Petitioner contends:

1. In alleged violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) ("<u>Miranda</u>"), the trial court admitted Petitioner's statement to Officer Leos that the rifle accidentally went off while Petitioner was cleaning it (Pet. Mem., Ground One, pp. 1-10);

2. Petitioner allegedly is actually innocent (Pet. Mem., Ground Two, pp. 11-39);

3. The prosecutor allegedly committed misconduct, assertedly by:

   a. conspiring to present assertedly false evidence and perjured testimony;

   b. introducing the allegedly inadmissible hearsay testimony of Officers Gealta and Zarate;

   c. offering Petitioner a plea bargain which was an alleged "deal of corruption";

   d. engaging in vindictive prosecution after Petitioner assertedly declined a plea offer, although the prosecutor allegedly knew that Petitioner assertedly only had committed negligent discharge of a firearm;

///

13

e.   opposing a defense motion to dismiss at the preliminary hearing, although allegedly knowing the evidence was insufficient;

f.   submitting an allegedly false declaration under California Code of Civil Procedure section 170.6 in order to obtain a different judge who would make a more favorable ruling on the admissibility of Petitioner's prior acts of violence upon the victim;

g.   introducing evidence of Petitioner's prior bad acts; and

h.   improperly impeaching the victim at trial

(Pet. Mem., Ground Three, pp. 40-50);

4.   a. Petitioner's trial counsel allegedly rendered ineffective assistance, by assertedly:

i.   failing to answer Petitioner's letters and questions and to visit Petitioner prior to trial;

ii.  failing to subpoena Dr. Lew;

iii. failing to accept photographs showing holes in the garage and the wall, allegedly given to counsel by Petitioner's girlfriend, and failing to submit these photographs as evidence;

14

iv.   failing to call Dr. Lew and Ms. Castle to testify and to subpoena Vickie Schwartz, Howard Leccaine, Ms. Pemberton and Ms. Castle;

v.   refusing to allow Petitioner to testify;

vi.   picking an all-female jury;

vii. failing to obtain alleged Brady[5] evidence;

viii. failing to object to Officer Gealta's allegedly perjured testimony;

ix.   failing to object to the prosecutor's alleged misconduct in assertedly obtaining from Petitioner's file information concerning Petitioner's complaints about sleeping on the floor and being beaten in jail;

x.   denying Petitioner's request for Petitioner's file;

xi. failing to move for appointment of an investigator;

xii.   allowing a conflict with Ms. Pemberton over fees to influence counsel's decisions regarding witnesses, an investigator, Petitioner's testimony and motions;

///

---

[5]   Brady v. Maryland, 373 U.S. 83 (1963).

15

xiii. failing to object to the prosecutor's alleged use of hearsay evidence and evidence of Petitioner's prior bad acts; and

xiv. failing to introduce "Sheriff's Complaints"

(Pet. Mem., Ground Four, first part, pp. 51-56);

4.   b. Petitioner's appellate counsel allegedly rendered ineffective assistance, by assertedly:

i.   refusing to take Petitioner's calls;

ii. preventing Petitioner from filing a pro se habeas petition in the Court of Appeal;

iii. failing to assert on appeal Petitioner's claims of a Miranda violation, actual innocence, prosecutorial misconduct, ineffective assistance of trial counsel and a Brady violation;

iv. filing an unauthorized petition for review;

v.   failing to contact witnesses; and

vi. failing to move for an investigator and to make a "Pitchess" motion;

///

1   (Pet. Mem., Ground Four, second part, pp. 57-61);

2

3        5.   The prosecutor violated <u>Brady v. Maryland</u> by suppressing

4   allegedly exculpatory evidence consisting of: (a) Petitioner's

5   "Sheriff's Complaints" concerning sleeping on the floor and jail

6   beatings; (b) a taped interview between Petitioner and detectives

7   conducted at the jail; (c) a bullet and a brick; and (d) the

8   prosecutor's alleged knowledge that Petitioner had discharged the

9   rifle negligently (Pet. Mem., Ground Five, pp. 62-69); and

10

11       6.   The trial court allegedly violated Due Process by allowing

12  the jury to hear testimony that Petitioner previously had fired a

13  rifle five times to frighten the victim (Pet. Mem., Ground Six,

14  pp. 70-82).[6]

15

16                            **DISCUSSION**

17

18  I.   **The Petition Is Mixed.**

19

20       A federal court will not grant a state prisoner's petition for

21  writ of habeas corpus unless it appears that the prisoner has

22  exhausted available state remedies.   28 U.S.C. § 2254(b) - (c);

23  <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>O'Sullivan v. Boerckel</u>, 526

24  U.S. 838, 842 (1999).   "Comity thus dictates that when a prisoner

25  alleges that his continued confinement for a state court conviction

26  _____

27       [6]   As indicated above, it is unclear whether Petitioner

28  intends to abandon Ground Six of the Petition.   In any event, as
    discussed below, Ground Six is unexhausted.

1  violates federal law, the state courts should have the first

2  opportunity to review this claim and provide any necessary relief."

3  O'Sullivan v. Boerckel, 526 U.S. at 844.  The exhaustion requirement

4  seeks to avoid "the unseemliness of a federal district court's

5  overturning a state court conviction without the state courts having

6  had an opportunity to correct the constitutional violation in the

7  first instance."  Id. at 844-45 (citations, internal brackets and

8  quotations omitted).  Exhaustion is considered on a "claim-by-claim"

9  basis.  Insyxiengmay v. Morgan, 403 F.3d 657, 667 (9th Cir. 2005).

10  Petitioner bears the burden to show compliance with the exhaustion

11  requirement.  See, e.g., Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th

12  Cir. 1982), cert. denied, 455 U.S. 1023 (1982); see also Brown v.

13  Cuyler, 669 F.2d 155, 158 (3d Cir. 1982); Powers v. Ayers, 2008 WL

14  917473, at *1 (N.D. Cal. Apr. 3, 2008).

15

16      State remedies have not been exhausted unless and until the

17  petitioner's federal claims have been fairly presented to the state's

18  highest court.  See Castille v. Peoples, 489 U.S. 346, 350-51 (1989);

19  James v. Borg, 24 F.3d 20, 24 (9th Cir.), cert. denied, 513 U.S. 935

20  (1994).  A claim has not been fairly presented unless the petitioner

21  has described in the state court proceedings both the operative facts

22  and the federal legal theory on which his claim is based.  Duncan v.

23  Henry, 513 U.S. 364, 365-66 (1995); Anderson v. Harless, 459 U.S. 4, 6

24  (1982); Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999).  The

25  petitioner must provide the state court with "all of the facts

26  necessary to give application to the constitutional principle upon

27  which the petitioner relies."  Davis v. Silva, 511 F.3d 1005, 1009

28  (9th Cir. 2008) (citations, quotations, brackets and footnote

1  omitted).

2

3      As discussed below, Petitioner has exhausted available state

4  remedies as to only some of his claims.  Consequently, the present

5  Petition is "mixed."

6

7      **A.    Ground One (Miranda violation)**

8

9      Petitioner has exhausted the <u>Miranda</u> claim contained in Ground

10  One.  Although Petitioner did not raise any <u>Miranda</u> claim in his

11  petition for review filed in the California Supreme Court, he did

12  assert the claim in his Request for Judicial Notice in support of the

13  petition for review (Respondent's Second Lodgment 4, p. 12).  In that

14  document, Petitioner contended Officer Leos did not give Petitioner

15  <u>Miranda</u> advisements.  In an exhibit attached to the document,

16  Petitioner stated that Officer Leos questioned Petitioner after

17  Petitioner was handcuffed and placed in a squad car (<u>see</u> Pet. Mem.,

18  Ex. A-2; Respondent's Lodgment 4, Ex. A-2).  Petitioner thus fairly

19  presented to the California Supreme Court the operative facts and the

20  federal legal theory underlying Ground One.

21

22      **B.    Ground Two (Actual Innocence)**

23

24      Petitioner asserts the jury convicted Petitioner on the basis of

25  a 911 call that was false and the product of mental illness and

26  dementia (Pet. Mem., pp. 11-12).  Petitioner also asserts that it was

27  physically impossible for Petitioner to have fired the gun at Ms.

28  Villanueva (Pet. Mem., pp. 15-38).

1    Petitioner did not raise any actual innocence claim in his

2    petition for review filed in the California Supreme Court.[7]  In

3    Petitioner's Request for Judicial Notice in support of his California

4    Supreme Court petition for review, Petitioner asserted actual

5    innocence (Respondent's Second Lodgment 4, pp. 6-8).  Petitioner there

6    alleged that the victim's 911 call was false and the product of mental

7    illness and dementia (id.).  To the extent Petitioner contends in the

8    present Petition that the allegedly false 911 call and the victim's

9    alleged mental illness and dementia demonstrate Petitioner's actual

10   innocence, this claim is exhausted.

11

12       In Petitioner's actual innocence claim contained in his Request

13   for Judicial Notice submitted to the California Supreme Court,

14   Petitioner alleged: "Gealta offered false testimony to jury to impeach

15   [Ms. Villanueva] and it shocks the conscience and is Physically

16   Impossible see Issue 3" (id., p. 8).  However, in this claim

17   Petitioner did not provide any factual allegations supporting

18   Petitioner's apparent contention that it was "physically impossible"

19   for him to have committed the crime.  The bare reference to "Issue 3,"

20   apparently a reference to the prosecutorial misconduct claim contained

21   in the Request for Judicial Notice, does not suffice to constitute

22   fair presentation of the facts Petitioner now contends show his

23   innocence by physical impossibility.  Moreover, Petitioner did not

24   attach to the Request for Judicial Notice a number of the exhibits

25   _____

26       [7]    The petition for review challenged the sufficiency of
     the evidence on the ground that the victim's repudiation under
27   oath of her earlier statements inculpating Petitioner rendered
     the evidence insufficient (see Respondent's Lodgment 12, pp. 8-
28   11).

1   attached to the present Petition, including photographs and hand-drawn

2   illustrations.   To the extent Petitioner contends the evidence shows

3   his alleged actual innocence because of physical impossibility,

4   Petitioner's actual innocence claim is unexhausted.

5

6   C.   **Ground Three (Prosecutorial Misconduct)**

7

8        Petitioner did not assert any prosecutorial misconduct claim in

9   his petition for review to the California Supreme Court.   Petitioner

10  asserted a number of prosecutorial claims in his Request for Judicial

11  Notice and "Augment" habeas corpus petition submitted to the

12  California Supreme Court (see Respondent's Supplemental Lodgments 4,

13  5).   However, Petitioner did not fairly present to the California

14  Supreme Court his present claims that the prosecutor committed

15  misconduct by: (1) allegedly offering Petitioner a plea bargain which

16  Petitioner characterizes as a "deal of corruption"; (2) allegedly

17  engaging in vindictive prosecution; (3) assertedly opposing a defense

18  motion to dismiss at the preliminary hearing, although allegedly

19  knowing the evidence was insufficient; and (4) assertedly submitting

20  an allegedly false declaration under California Code of Civil

21  Procedure section 170.6 in order to obtain a different judge to make a

22  more favorable ruling.   These claims are unexhausted.

23

24  D.   **Ground Four, First Part (Ineffective Assistance of Trial**

25       **Counsel)**

26

27       Petitioner did not assert a claim of ineffective assistance of

28  trial counsel in his petition for review to the California Supreme

1  Court.  In his Request for Judicial Notice submitted to the California

2  Supreme Court, Petitioner alleged that trial counsel rendered

3  ineffective assistance in a number of ways (see Respondent's Lodgment

4  4).  However, Petitioner did not fairly present to the California

5  Supreme Court his claims that trial counsel rendered ineffective

6  assistance by allegedly: (1) failing to accept and introduce as

7  evidence purported photographs assertedly given to counsel by

8  Petitioner's girlfriend; (2) failing to subpoena Vickie Schwartz,

9  Howard Leccaine and Ms. Pemberton; (3) failing to obtain alleged Brady

10  evidence; (4) failing to object to asserted prosecutorial misconduct

11  and perjured testimony; (5) denying Petitioner's request for

12  Petitioner's file; (6) allowing a conflict with Ms. Pemberton over

13  fees to influence counsel's decisions regarding witnesses, an

14  investigator, Petitioner's testimony and motions; (7) failing to

15  object to the prosecutor's use of hearsay evidence and evidence of

16  Petitioner's prior bad acts; and (8) failing to introduce "Sheriff's

17  Complaints."  Accordingly, these claims are unexhausted.  See

18  Pappageorge v. Sumner, 688 F.2d 1294 (9th Cir. 1982), cert. denied,

19  459 U.S. 1219 (1983) (addition of new facts in support of ineffective

20  assistance of counsel claim renders the claim unexhausted).

21

22     E.    Ground Four, Second Part (Ineffective Assistance of

23           Appellate Counsel)

24

25     Petitioner did not raise any claim of ineffective assistance of

26  appellate counsel in his petition for review to the California Supreme

27  Court.  In his Request for Judicial Notice submitted to the California

28  Supreme Court, Petitioner alleged that appellate counsel rendered

1  ineffective assistance in several ways (see Respondent's Lodgment 4).
2  However, Petitioner did not fairly present to the California Supreme
3  Court his present claims that appellate counsel allegedly: (1) refused
4  to take Petitioner's calls; (2) failed to assert on appeal
5  Petitioner's claims of actual innocence, prosecutorial misconduct and
6  and evidence of uncharged bad acts, ineffective assistance of trial
7  counsel, and a Brady violation; (3) filed an unauthorized petition for
8  review; (4) failed to contact witnesses; and (5) failed to move for an
9  investigator and to make a "Pitchess" motion.  Accordingly, these
10  claims are unexhausted.  See id.
11
12      F.   Ground Five (Brady Violation)
13
14      Petitioner did not raise any Brady claim in his petition for
15  review filed in the California Supreme Court.  In his Request for
16  Judicial Notice and "Augment" habeas corpus petition submitted to the
17  California Supreme Court, Petitioner alleged that the prosecutor
18  suppressed evidence of the bullet, the brick, and a taped interview of
19  Petitioner (see Respondent's Supplemental Lodgments 4, 5).  However,
20  Petitioner did not fairly present to the California Supreme Court his
21  claims that the prosecutor violated Brady by suppressing evidence of
22  Petitioner's "Sheriff's Complaints" or the prosecutor's asserted
23  knowledge that Petitioner allegedly had only discharged the rifle
24  negligently.  Accordingly, these claims are unexhausted.
25
26      G.   Ground Six (Admission of Prior Bad Act Evidence)
27
28      In Petitioner's petition for review, Petitioner alleged that the

1  trial court violated state law by allowing the jury to hear testimony

2  that Petitioner previously had fired a rifle five times to frighten

3  the victim, on the ground that this evidence assertedly failed to meet

4  the preponderance of evidence standard required for its admission

5  under California law (see Respondent's Lodgment 12, pp. 3-7).

6  Petitioner did not allege any violation of the federal Constitution or

7  cite any cases, state or federal, supporting any constitutional

8  argument. Petitioner's bare citations to state court cases in support

9  of his state law argument did not suffice to exhaust this claim. See

10  Insyxiengmay v. Morgan, 403 F.3d at 668 ("In this circuit, the

11  petitioner must make the federal basis of the claim explicit either by

12  specifying particular provision of the federal Constitution or

13  statutes, or by citing to federal case law."); Casey v. Moore, 386

14  F.3d 896, 912 n.13 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005)

15  ("For a federal issue to be presented by the citation of a state

16  decision dealing with both state and federal issues relevant to the

17  claim, the citation must be accompanied by some clear indication that

18  the case involves federal issues."). Accordingly, this claim is

19  unexhausted.[8]

20  ///

21  ///

22  ///

23

24  _____

   [8]  Although the record does not contain the "4 page brief"
25  Petitioner evidently submitted to the California Supreme Court in
   connection with his petition for review, Petitioner has failed to
26  show, or even to argue, that this document demonstrates
   exhaustion of any of Petitioner's claims. As mentioned
27  previously, Petitioner bears the burden to show exhaustion. See
   Cartwright v. Cupp, 650 F.2d at 1104; Powers v. Ayers, 2008 WL
28  917473, at *1.

24

II.   **Petitioner Is Not Entitled to a Stay.**

In Rhines v. Weber, 544 U.S. 269 (2005) ("Rhines"), the United States Supreme Court held that, in "limited circumstances," a district court has discretion to stay and hold in abeyance a mixed habeas corpus petition pending exhaustion of state remedies.  Id. at 277. Stay and abeyance is "only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."  Id.; see also Jackson v. Roe, 425 F.3d 654, 660-61 (9th Cir. 2005).  The Rhines Court held that, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant a stay when the unexhausted claims were "plainly meritless."  Rhines, 544 U.S. at 277 (citation omitted).  Under Rhines, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  Rhines, 544 U.S. at 278.

In Rhines, the Supreme Court did not explain what sort of showing would suffice to satisfy the requirement that a petitioner show "good cause" for delay in exhausting in order to obtain a stay and abey order.  In Jackson v. Roe, supra, the Ninth Circuit held that a showing of "extraordinary circumstances" was not required, but did not otherwise elucidate the meaning of "good cause" in this context.  See Jackson v. Roe, 425 F.3d at 661-62.  However, the law is well-developed on the analogous issue of the meaning of "cause" to excuse a

25

1  failure to exhaust which results in a procedural default.  In

2  determining both the "cause" required to excuse a procedural default

3  and the "good cause" required under Rhines, the relevant inquiry is

4  the petitioner's justification for failing to exhaust his or her

5  claims prior to filing a federal habeas petition.  Therefore, the

6  Court deems it appropriate to look to procedural default cases for

7  guidance in order to determine whether Petitioner has demonstrated the

8  requisite "good cause" for failing to exhaust his unexhausted claims

9  prior to filing this habeas action.  See Noble v. Harrison, 491 F.

10  Supp. 2d 950, 955-56 (C.D. Cal. 2007); Johnson v. Sullivan, 2006 WL

11  37037, at *3 (C.D. Cal. Jan. 4, 2006); Hernandez v. Sullivan, 397 F.

12  Supp. 2d 1205, 1206-07 (C.D. Cal. 2005); see also Carter v. Friel, 415

13  F. Supp. 2d 1314, 1318 (D. Utah 2006).[9]  To show "cause" for a

14  procedural default, a petitioner ordinarily must show that the default

15  resulted from an objective factor external to the petitioner which

16  cannot fairly be attributed to him or her.  Coleman v. Thompson, 501

17  U.S. 722, 753 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488

18  (1986)); see High v. Ignacio, 408 F.3d 585, 590 (9th Cir. 2005).

19

20      Petitioner has not shown good cause for his failure to exhaust

21  the unexhausted claims contained in Grounds One through Five.

22  Petitioner knew or should have known of the existence of all of these

23  claims at least by the time Petitioner's appellate counsel perfected

24

25  _____

26      [9]   Several district courts have rejected the analogy to
    the "cause" necessary to overcome a procedural default.  See
    Riner v. Crawford, 415 F. Supp. 2d 1207, 1209-10 (D. Nev. 2006)
27  (citing cases); Rhines v. Weber, 408 F. Supp. 2d 844, 848-49
    (D.S.D. 2005).  This Court finds more persuasive the reasoning of
28  those courts adopting the analogy.

1  the appeal in the Court of Appeal.  Although Petitioner appears to

2  fault appellate counsel for failing to present some of these claims to

3  the California Supreme Court, Petitioner offers no reason why

4  Petitioner could not have presented these claims to that Court either

5  in his submissions in support of the petition for review or in a

6  separate habeas corpus petition.  Indeed, Petitioner alleged a number

7  of these claims in his habeas petitions filed in the Court of Appeal

8  and in his petition for certiorari filed in the United States Supreme

9  Court (<u>see</u> Respondent's Lodgments 6, 8, 14).

10

11      With respect to the unexhausted claim contained in Ground Six,

12  Petitioner appears to assert that his appellate counsel ineffectively

13  failed to present this claim to the California Supreme Court (<u>see</u>

14  Reply, p. 15).  The Court need not determine whether, in the

15  circumstances of this case, appellate counsel's alleged

16  ineffectiveness could constitute good cause under <u>Rhines</u>, because

17  Ground Six is plainly meritless.  The United States Supreme Court

18  expressly has declined to rule on the issue whether the introduction

19  of prior bad act evidence to show propensity to commit the current

20  crime violates the Constitution.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62,

21  75 n.5 (1991) ("we express no opinion on whether a state law would

22  violate the Due Process Clause if it permitted the use of 'prior

23  crimes' evidence to show propensity to commit a charged crime").

24  Therefore, under the standard of review applicable to federal habeas

25

26

27

28

1 | claims contained in 28 U.S.C. section 2254(d),[10] Petitioner's

2 | challenge to the admission of the prior bad act evidence plainly has

3 | no potential merit.  See Larson v. Palmateer, 515 F.3d 1057, 1066 (9th

4 | Cir. 2008) (because Supreme Court in Estelle v. McGuire "expressly

5 | left this issue an open question," state court did not unreasonably

6 | apply any clearly established federal law in rejecting claim that

7 | admission of petitioner's criminal history violated due process)

8 | (citation omitted).

9 |

10 |                          PETITIONER'S OPTIONS

11 |

12 | Where, as here, a stay is not warranted, a district court

13 | generally must dismiss a "mixed" habeas corpus petition raising both

14 | exhausted and unexhausted claims.  28 U.S.C. § 2254(b); see Rhines,

15 | 544 U.S. 273-74; Pliler v. Ford, 542 U.S. 225, 230 (2005); Rose v.

16 | Lundy, 455 U.S. 509, 522 (1982); Jackson v. Roe, 425 F.3d 654, 658,

17 | 661 n.9 (9th Cir. 2005) ("when a district court opts not to stay a

18 | mixed petition pursuant to Rhines, the requirements set forth in Rose

19 |

20 |

21 |

22 |

---

23 |     [10]     Under 28 U.S.C. section 2254(d), a federal court may

24 | not grant an application for writ of habeas corpus on behalf of a
     person in state custody with respect to any claim that was

25 | adjudicated on the merits in state court proceedings unless the
     adjudication of the claim: (1) "resulted in a decision that was

26 | contrary to, or involved an unreasonable application of, clearly
     established Federal law, as determined by the Supreme Court of

27 | the United States"; or (2) "resulted in a decision that was based
     on an unreasonable determination of the facts in light of the

28 | evidence presented in the State court proceeding."

28

1   [v. Lundy] continue to govern"; original emphasis).[11]  However, a

2   court may not dismiss a mixed petition without first permitting the

3   petitioner the opportunity to amend the petition to delete any

4   unexhausted claims.  Jefferson v. Budge, 419 F.3d 1013, 1015 (9th Cir.

5   2005) (citing, inter alia, Rose v. Lundy, 455 U.S. at 510)).[12]  If

6   Petitioner chooses to do so, the Court will proceed to the matter of

7   Petitioner's exhausted claims.

8   ///

9   ///

10  _____

11      [11]    Petitioner still may be able to present his unexhausted
    claims to the California Supreme Court.  See, e.g., In re Harris,
12  5 Cal. 4th 813, 825, 21 Cal. Rptr. 2d 373, 855 P.2d 391 (1993)
    ("[H]abeas Corpus has become a proper remedy in this state to
13  collaterally attack a judgment of conviction which has been
    obtained in violation of fundamental constitutional rights.")
14  (citations and quotations omitted); Mendez v. Superior Court, 87
    Cal. App. 4th 791, 799, 104 Cal. Rptr. 2d (2001) (claim that
15  conviction was obtained in violation of fundamental
    constitutional rights may be raised by state habeas petition;
16  citation and internal quotations omitted).  The Court expresses
    no opinion concerning whether consideration of a state habeas
17  petition might be foreclosed by the principles discussed in In Re
    Clark, 5 Cal. 4th 750, 763-87, 21 Cal. Rptr. 2d 509, 517-34, 855
18  P.2d 729 (1993).  The California Supreme Court should evaluate
    this matter in the first instance.  Moreover, even if there
19  exists an applicable state procedural bar, the California Supreme
    Court nevertheless might choose to reach the merits of
20  Petitioner's claims.  See, e.g., Park v. California, 202 F.3d
    1146 (9th Cir.), cert. denied, 531 U.S. 918 (2000).
21

22

23      [12]    In Pliler v. Ford, 542 U.S. at 231-34, the Supreme
    Court appeared to hold that a District Court is not required to
24  warn a petitioner who has filed a "mixed" petition of: (1) the
    court's inability to stay the proceeding, absent the stay and
25  abeyance procedure; or (2) the possibility (or certainty) that a
    future federal petition would be time-barred if the court
26  dismisses the mixed petition.  In Jefferson v. Budge, 419 F.3d at
    1015, the Ninth Circuit held that Pliler v. Ford did not abrogate
27  the rule that a district court must afford a petitioner the
    option of amending a mixed petition to delete unexhausted claims.
28

1    Alternatively, Petitioner may request a dismissal of the entire

2  Petition without prejudice.  The Court observes, however, that

3  dismissal of the present proceeding (even dismissal "without

4  prejudice") might contribute toward a statute of limitations bar

5  against a federal petition subsequently filed by Petitioner.[13]

6  Although section 2244(d)(2) of Title 28 U.S.C. tolls limitations

7  during the pendency of "a properly filed application for State post-

8  conviction or other collateral review," the statute of limitations

9  probably would not have been tolled during the pendency of the present

10  federal petition. See Duncan v. Walker, 533 U.S. 167 (2001).[14]

11  ///

12  ///

13  _____

14    [13]    This Court does not interpret Pliler v. Ford to forbid
   the Court from noting a possible statute of limitations issue and
15  describing Petitioner's options neutrally, without encouragement
   or discouragement.
16

17    [14]    In Pace v. DiGuglielmo, 544 U.S. 408 (2005), the
   Supreme Court assumed, without deciding, that equitable tolling
18  could apply to the habeas statute of limitations set forth in 28
   U.S.C. section 2244(d).   See also Lawrence v. Florida, 127 S. Ct.
19  1079, 1085 n.3 (2007) (assuming, without deciding, the
   availability of equitable tolling).  The Ninth Circuit permits
20  equitable tolling of the statute of limitations "if
   'extraordinary circumstances beyond a prisoner's control make it
21  impossible to file a petition on time.'"  See Spitsyn v. Moore,
   345 F.3d 796, 799 (9th Cir. 2003) (citation omitted); but see
22  United States v. Beggerly, 524 U.S. 38, 48 (1998) (equitable
   tolling not permissible where the text of the statute of
23  limitations defers the statute's commencement until the plaintiff
   knew or should have known of the existence of the claim); compare
24  Neverson v. Farquharson, 366 F.3d 32, 40-41 (1st Cir. 2004)
   (rejecting argument that delayed accrual and statutory tolling
25  provisions of section 2244(d) show legislative intent to preclude
   equitable tolling); Harris v. Hutchinson, 209 F.3d 325, 329 (4th
26  Cir. 2000) (same).  This Court need not and does not now
   determine whether equitable tolling might apply with respect to a
27  federal petition that Petitioner subsequently might file.
28

1

**RECOMMENDATION**

2

3      For the foregoing reasons, IT IS RECOMMENDED that the Court issue

4   an Order: (1) approving and adopting this Report and Recommendation;

5   (2) deeming to be exhausted the claims identified in the Report and

6   Recommendation as exhausted; (3) deeming to be unexhausted the claims

7   identified in the Report and Recommendation as unexhausted;

8   (4) denying Petitioner's Motion for a Stay; and (5) ordering that,

9   within thirty (30) days of the date of the Order, Petitioner shall

10  file either: (a) a request to amend the Petition to delete and abandon

11  Petitioner's unexhausted claims; or (b) a request for dismissal of the

12  entire Petition without prejudice.

13

14      DATED:  May 19, 2008.

15

16                          _____/S/_____
                                 CHARLES F. EICK
17                          UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

1  **NOTICE**

2      Reports and Recommendations are not appealable to the Court of

3  Appeals, but may be subject to the right of any party to file

4  objections as provided in the Local Rules Governing the Duties of

5  Magistrate Judges and review by the District Judge whose initials

6  appear in the docket number.  No notice of appeal pursuant to the

7  Federal Rules of Appellate Procedure should be filed until entry of

8  the judgment of the District Court.